**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 09-cv-01390-MSK-BNB

**JANELL KENFIELD,**

   Plaintiff,

v.

**COLORADO DEPARTMENT OF PUBLIC HEALTH & ENVIRONMENT,**

   Defendant.

_____

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
TO MODIFY JUDGMENT AND DENYING PLAINTIFF'S
MOTION TO MODIFY JUDGMENT**

_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Modify (# 122) the Court's September 6, 2011 Opinion (# 120) granting summary judgment to the Defendant, Ms. Kenfield's response (# 124), and the Defendant's reply (# 125); and Ms. Kenfield's Motion to Modify (# 123) the Court's Opinion, the Defendant's response (# 126), and Ms. Kenfield's reply (# 129).

The Court will not recite the facts in extensive detail, instead referring the reader to the September 6, 2011 Opinion. In summary, the Court granted summary judgment to the Defendant on Ms. Kenfield's claims that she was given adverse performance evaluations and denied promotions by her supervisor, Ms. Bruce (who is black) as a result of discrimination based on Ms. Kenfield's race (white), and that she had job duties taken away from her as retaliation for having filed complaints of discrimination.

1

Both parties have now moved for reconsideration or alteration of the Court's Opinion and Judgment.

### A. Defendant's motion

The Defendant's motion **(# 122)** is straightforward: the Defendant contends that the Judgment **(# 121)** entered by the Clerk of the Court requires revision insofar as it failed to award costs pursuant to Fed. R. Civ. P. 54(d)(1). The motion is well taken. Fed. R. Civ. P. 54(d)(1) provides that costs are to be awarded as a matter of course "unless a federal statute, these rules, or a court order provides otherwise."

Ms. Kenfield makes a perfunctory argument that 42 U.S.C. § 2000e-5 has some bearing on the issue of costs, but does not identify any particular provision of that lengthy statute standing for that proposition. The Court finds nothing in the cited statute that addresses the propriety *vel non* of awarding costs against an employee. Ms. Kenfield also argues that the Court "has some discretion concerning the award of costs and may deny or limit costs under equitable principles or other legal principles," but she neither cites to authority supporting this proposition nor goes on to address how such authority applies here. The remainder of her motion is essentially a recapitulation of the major themes of her allegations: that she is a good employee done wrong by the Defendant. The Court finds no merit in the contentions that Ms. Kenfield's largely conclusory arguments that costs should not be awarded against her. Accordingly, the Court grants the Defendant's motion and deems the Judgement amended to include an award of costs pursuant to Rule 54(d)(1).

### B. Ms. Kenfield's motion

Ms. Kenfield's motion **(# 123)** is more elaborate. She contends that the Court's Opinion

suffers from several broad categories of error: (i) the Court failed to consider certain facts that demonstrate a pattern of discriminatory conduct; (ii) the Court "has viewed the facts in isolation"; (iii) the Court did not take the facts in the light most favorable to Ms. Kenfield; (iv) the Court erroneously made credibility findings (which, Ms. Kenfield later argues, also "invaded the province of the jury"); and (v) the Court failed to consider a "mixed motive" analysis.

The Court treats Ms. Kenfield's motion as seeking reconsideration.  Because Ms. Kenfield's motion was filed within 28 days of the entry of judgment and alleges that the Court misapprehended the applicable statute and factual record, it falls under Fed. R. Civ. P. 59(e). *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011).  Such a motion is an appropriate means to "correct manifest errors of law" *Jennings v. Rivers*, 394 F.3d 850, 854-55 (10th Cir. 2005).  This is appropriate where the Court "has misapprehended the facts, a party's position, or the controlling law," but it is not a mechanism "to revisit issues already addressed." *Servants of the Paraclete v. Does*, 204 F.3d1005, 1012 (10th Cir. 2000).  With this standard in mind, the Court turns to each of Ms. Kenfield's contentions.

The Court begins with Ms. Kenfield's argument that the Court "failed to consider facts in evidence demonstrating a pattern of discriminatory conduct."  This argument is somewhat difficult to parse.  Ms. Kenfield does not identify particular facts that she contends the Court failed to consider, along with the appropriate cite in the record.  Instead, her presentation is disorganized, and rarely cites the Court to any specific fact found in the record.  Her argument consists of more than 4½ pages of text, but contains only three citations to specific exhibits – the deposition transcripts of Ms. Przekwas, Ms. Charteris, and Ms. Wolff – without providing

specific page numbers to the relevant portion of those depositions; two specific page citations to the deposition transcript of Mr. Laura (which is not otherwise identified by exhibit number); vague and generalized statements that certain facts can be found in the depositions of Ms. Osborne-Wells and Mr. Bongiovanni but again, without any specific citations to the relevant portions of their testimony (much less with a citation to the appropriate exhibit number), and references to certain paragraphs of Ms. Kenfield's own affidavit. Ms. Kenfield bears the burden of pointing the Court to the specific evidence she believes was overlooked or misunderstood. Although Ms. Kenfield identifies depositions or affidavits, she does so wholesale, without identifying a pertinent fact or specific citation. *See* Docket # 120 at 23, *citing Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998) ("the requirement that the [movant] specifically reference facts in its motion materials and the record is of special importance in an employment discrimination case . . . [w]here the burden to present such specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself"). The failure to identify where in the record particular facts are located impedes reconsideration.

Second, Ms. Kenfield intersperses her recitation of factual contentions that the Court previously considered and discussed in its opinion with facts that she contends the Court overlooked. For example, Ms. Kenfield discusses the downgrading of her performance evaluation and the observations of Ms. Ray, both of which the Court discussed in its Opinion in extensive detail. *Docket* # 120 at 5-7 (performance evaluation), 13-14 (Ms. Ray's testimony). The inclusion of facts that the Court **did** consider, coupled with the lack of particularity and citation in Ms. Kenfield's arguments concerning facts the Court **did not** consider makes it

extremely difficult to effectively ascertain and evaluate Ms. Kenfield's argument.

Nevertheless, the Court has reviewed the various deposition transcripts referenced by Ms. Kenfield in her motion, and finds nothing therein that warrants reconsideration of the Court's decision. The deposition of Ms. Przekwas is illustrative in this respect. Ms. Kenfield contends that Ms. Przekwas was one of the white employees "target[ted] and run[ ] out" by Ms. Bruce (which Ms. Kenfield contends is demonstrative of a "pattern of discriminatory conduct" by Ms. Bruce). This argument suffers from the same defect that the Court discussed extensively in its opinion: Ms. Przekwas' deposition does suggest she found Ms. Bruce difficult to deal with, "demeaning," and that eventually, Ms. Przekwas decided she would rather look for another job that to stay and be "[un]comfortable" working for Ms. Bruce. But at no time in the supplied deposition does Ms. Przekwas opine, even remotely, that Ms. Bruce's treatment of her was racially-motivated.[1]

This highlights the central flaw in Ms. Kenfield's theory of the case – the mere fact that Ms. Bruce was demeaning, unpleasant, or even downright hostile to some employees is not necessarily indicia of racial discrimination, even though Ms. Bruce is black and the offended employees are white. As the Court's prior Opinion explains in some detail, Title VII requires more than just a contention that one's supervisor of a different race was rude, unfriendly, or

---

[1] Indeed, it would appear that Ms. Przekwas would refute Ms. Kenfield's contention that Ms. Bruce engaged in systematic discrimination against white subordinates. Ms. Kenfield suggests that both Ms. Przekwas and Ms. Charter were both white victims of Ms. Bruce's hostility, but Mr. Przekwas believes that Ms. Bruce treated Ms. Charter more favorably. Although Ms. Charter complained to Ms. Przekwas of feeling demeaned, Ms. Przekwas states that "her experiences seemed different than mine with [Ms. Bruce] one-on-one. And I don't know what to attribute that to, whether she was truly treated differently or took it differently, I don't know." When asked whether Ms. Bruce treated Ms. Charter worse or better, Ms. Przekwas stated "Maybe better [than me]."

abrasive. *Docket#* 120 at 12. Sustaining Ms. Kenfield's claims on the record herein would amount to turning Title VII into a "general civility code" for the workplace, offering relief anytime one's supervisor of a different race was rude or dismissive. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998). Without some meaningful evidence suggesting that Ms. Bruce harbored race-based hostility against whites, Ms. Kenfield has articulated nothing more than the ordinary disappointments and indignities that result from communication difficulties or personality conflicts with a new supervisor. Accordingly, the Court rejects Ms. Kenfield's contention that reconsideration of the Court's Opinion is warranted by facts overlooked by the Court.

Next, Ms. Kenfield argues – in two sentences without citation to authority or example – that the Court "views some of the facts in an isolated fashion, rather than reviewing and analyzing the facts in an ongoing pattern of discrimination." Ms. Kenfield states that "the factual predicate of this argument is set forth above [with regard to the prior argument]," and thus, this Court rejects it for the same reasons discussed above.

Ms. Kenfield's third argument is that the Court failed to properly construe the facts in the light most favorable to her as the non-movant. She gives a single example: "the Court's conclusion that the negative job actions were not taken within time proximity for an inference [when, t]o the contrary, the evidence . . . shows that negative job actions occurred immediately after filing a grievance. . . ." Putting aside the apparent inapplicability of Ms. Kenfield's example to the argument the Court understands her to be making,[2] the Court notes that Ms.

---

[2]Ms. Kenfield appears to be suggesting that there is a factual dispute over the date that a particular job action occurred, but she does not specify the specific job action at issue nor the factual dispute over the date on which it occurred. At best the Court can determine from reading

Kenfield's complaint is misplaced and that the Court resolved all actual factual disputes in Ms. Kenfield's favor. For the most part, the only major **factual** dispute in this case concerned the manner in which Ms. Bruce may have treated Ms. Kenfield and others.[2] Ms. Kenfield testified that Ms. Bruce was demeaning, hostile, and insulting, while Ms. Bruce presumably[3] testifying that she treated Ms. Kenfield calmly and respectfully. True to the summary judgment standard, the Court adopted Ms. Kenfield's version of events, and analyzed the claims based upon the assumption that, as Ms. Kenfield described, Ms. Bruce was demeaning and hostile to her. Accordingly, the Court finds no merit in Ms. Kenfield's contention that the Court failed to resolve factual disputes in her favor.

Perhaps a better articulation of Ms. Kenfield's argument is to say that she contends that the Court did not draw **inferences** from the facts in her favor. The summary judgement standard does require the Court to draw all "reasonable inferences [from the facts] in the light most

---

Ms. Kenfield's papers as a whole, she is actually complaining not of a dispute of **fact** over when a certain event occurred, but instead is complaining that the Court did not consider certain other events occurring earlier to be "negative job actions." Whether or not a particular event is a "job action" or not is a question of law, not fact, and thus, is not subject to the principle that the Court takes the **facts** in the light most favorable to the non-movant on summary judgment.

[2]There were a handful of genuine factual disputes on relatively minor points, which the Court expressly acknowledged resolving in Ms. Kenfield's favor. For example, there was an apparent dispute between the parties of whether particular tasks performed by Ms. Kenfield were classified as "lead worker" tasks (Ms. Kenfield's position) or "HP III" tasks (the Defendant's position). The Court resolved that dispute in Ms. Kenfield's favor, assuming the tasks to be "lead worker" tasks. *See Docket* # 120 at 7.

[3]The Court uses the word "presumably" here because, to its recollection, the Defendant did not attempt to dispute Ms. Kenfield's characterization of Ms. Bruce's manner. Indeed, there would be no point in doing so, as even if the Defendant argued that Ms. Bruce was eternally patient and polite to Ms. Kenfield, the summary judgment standard would require the Court to resolve the factual dispute – in what manner did Ms. Bruce treat Ms. Kenfield – by adopting Ms. Kenfield's version of events.

favorable to" the non-movant. *Oldenkamp v. United American Ins. Co.*, 619 F.3d 1243, 1246 (10th Cir. 2010). The key word here is "reasonable." Ms. Kenfield believes that evidence that a black supervisor was demeaning and hostile to some white employees but not to non-white employees reasonably permits an inference that the supervisor was acting out of racial hostility.; This Court disagrees, finding that inference to be **un**reasonable in the absence of more compelling evidence if discrimination. Thus, Ms. Kenfield's argument that the Court misapplied the summary judgment standard is nothing more than an argument that the Court erred in failing to adopt her view as to the strength of her evidence. Having reviewed the evidence originally presented, the Court reaches the same conclusion.

Ms. Kenfield next argues that the Court erred by making "credibility findings." By way of example, she points out that the Court concluded "that a personal dislike of Ms. Kenfield could explain Ms. Bruce's actions," and that "this is a credibility finding which is not based on the evidence."

This is not a "credibility" finding. What Ms. Kenfield describes is another way of looking at the issue discussed above – whether a reasonable inference of racial discrimination can be drawn from the evidence presented by Ms. Kenfield. The Court concluded that Ms. Kenfield's evidence, taken in its totality, did not give rise to a reasonable inference that Ms. Bruce's conduct toward her was more likely than not to have resulted from racial animus. As the party with the burden of proof, Ms. Kenfield is obligated to come forward with evidence that Ms. Bruce's actions "give rise to an inference of discrimination." *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). As the Court explained, Ms. Kenfield's evidence did not go far enough to exclude common, non-racial explanations for Ms. Bruce's treatment – such as

personal dislike or a clash of communication styles or expectations. Thus, she failed to carry her burden of proof. Such an analysis is entirely unrelated to questions of credibility.

Finally, Ms. Kenfield argues that the Court erred in failing to apply a "mixed motive" analysis. The Court begins by observing that such an argument is improper. Ms. Kenfield had the opportunity to argue for the application of a particular analytical framework in her summary judgment response, but made no mention of the "mixed motive" framework nor its application to this case. Because a motion for reconsideration is not a proper vehicle to present arguments that could have been raised in prior briefing, Ms. Kenfield's has no right to consideration of a "mixed motive" argument now.

Having considered the argument on its merits, however, the Court finds it unpersuasive. The mixed motive analysis applies "where both legitimate and illegitimate reasons motivated the decision." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003). It is codified at 42 U.S.C. § 2000e-2(m), which requires the employee to prove "that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice," and then allows the employer the opportunity to avoid certain items of damages by showing "that [it] would have taken the same action in the absence of the impermissible motivating factor."[4]

The mixed motive analysis is irrelevant here, as Ms. Kenfield failed to establish a *prima facie* case of discrimination, and thus, failed to demonstrate that her race "was a motivating

---

[4]Conceptually, the mixed motive analysis arises after the "pretext" stage of the traditional *McDonnell-Douglas* analysis. Once the employee has proven that the employer's tendered reason for the employment action is untrue and that discriminatory animus partially motivated the decision, the employer has the opportunity to prove that it would have taken the same action even if it had not harbored that animus.

factor" in the actions taken against her. Ms. Kenfield mistakenly believes that, at worst, she demonstrated that Ms. Bruce has both legal and illegal reasons for her actions. In fact, the Court's Opinion explains that Ms. Kenfield failed to come forward with sufficient evidence to permit the fact finder to conclude that anything other than legal reasons for the actions were at work. Accordingly, Ms. Kenfield's argument that the Court erred in not considering the mixed motive analysis is without merit.

Accordingly, the Defendant's Motion to Modify **(# 122)** is **GRANTED**, and the **JUDGMENT** is **DEEMED AMENDED** as of this date to include an award of costs to the Defendant pursuant to Fed. R. Civ. P. 54(d)(1). Ms. Kenfield's Motion to Modify **(# 123)** the Judgment is **DENIED**.

Dated this 20th day of August, 2012

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge